IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL CROCE, | ) | CASE NO. 1:15-CV-1758 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHELE MILLER, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Paul Croce ("Croce" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Croce is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Croce*, Cuyahoga County Court of Common Pleas Case No. CR-13-573312-A.

For the following reasons, the undersigned recommends the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Croce's conviction as follows:

> {¶ 3} The Cuyahoga County Grand Jury indicted Croce for three counts of
> aggravated robbery, three counts of aggravated burglary, two counts of
> kidnapping, three counts of rape, and one count of felonious assault.  The offenses
> arose from Croce breaking into a 67–year old woman's house where he raped her
> vaginally, orally, and anally, punched her, and stole money from her purse.  The
> crimes occurred in 2006, however, a DNA match was not found until 2008.
> Although the police made attempts to contact the victim, it was not until 2013 that
> she responded to their attempts to locate her.  The following evidence was
> presented to the jury.

> {¶ 4} On the night of July 19, 2006, the victim was awakened by the sound of her
> bathroom window being opened.  She called out, "Who's there?" A man
> responded, "Steve."  She went to her bedroom door and saw a man in shorts in the
> doorway.  The lights were off so she could not see clearly.  However, she
> described him to police as a white male, about six feet tall, with reddish brown
> hair, and a "gravelly voice."  She estimated he was 40 years old.  She told the
> man to get out of her house.  The man pushed her into the bedroom and onto her
> bed.

> {¶ 5} He put a pillow over her face.  When she told him she could not breathe, he
> put a blanket over her face.  He put what felt like a knife against her neck and told
> her that if she screamed he would slit her throat.  He then punched her so hard in
> her left cheek that she "saw stars."  The man forced her to perform oral sex, raped
> her vaginally, and digitally penetrated her anus with his finger.  When he was
> finished, he asked her if she had any money.  She told him that she had two
> dollars in her purse.  He took the two dollars and left.

> {¶ 6} After he left, the victim went to the bathroom to use the toilet and noticed
> the screen to her window was cut open.  She then called police.  The responding
> officer testified that the victim was very upset and crying and had a swollen left
> face.  The victim told him she did not know the assailant but provided him with
> the above description.  The officer noticed the screen in the bathroom was cut.

> {¶ 7} The victim was taken by EMS to Marymount Hospital.  Nurse Michelle
> Schreiber stated that her notes indicated that the victim was upset and disheveled
> and had a black eye and bruises on her left arm and neck.  Along with conducting
> a rape kit, Schreiber also collected "dry stain swabs" in the areas of the victim's
> breasts and neck because the victim had stated the assailant had licked her in
> those areas.  A cat-scan revealed the victim had a fractured cheek bone.

{¶ 8} Forensic scientist David Niemeyer testified that no seminal fluid was collected from the victim, which would not be unusual if the assailant did not ejaculate.  However, the dry stain swabs had the DNA of both the victim and an unknown male.  After comparing the DNA with Croce's, Niemeyer stated he could not be ruled out as a contributor.  He added to find someone that would create this type of DNA profile with the victim's, he would have to test 202 quadrillion to 300 trillion unrelated people to get this profile just one time.

{¶ 9} Detective Keith Hunter testified that when Croce was arrested, he asked Croce if he knew the victim or if he dated any older women.  Croce denied knowing the victim, but admitted to dating older women.  He denied having sexual relations with the victim and could not explain how his DNA got on her.

{¶ 10} Croce testified in his own defense.  He admitted he had prior convictions for safecracking, burglary, attempted breaking and entering, disorderly conduct, felonious assault, and driving while under suspension.  He pled guilty to all of these crimes and served time in prison.  He stated he was arrested outside his home in April 2013 for raping the victim.  When his defense attorney showed him a photograph of the victim, he recalled he knew her.

{¶ 11} According to Croce, he became acquainted with the victim when he would walk past her house on his way to a neighborhood bar.  She would be outside doing yard work.  They would first only exchange greetings, but then after time, they would engage in conversation.  He stated one night they sat in her backyard talking, and he kissed her.

{¶ 12} They proceeded to go inside her house where he kissed her neck and breasts.  He stated once he saw she had a large red scar on her chest, he became "freaked out" and told her he did not feel well.  He then told her he could not continue being physical with her because he had a girlfriend.  He stated the victim became angry and ordered him repeatedly to leave her house.  He was in a hurry to get out of the house and did not tie his shoes.  He claims he either tripped on his shoe strings or a rug and fell into the victim and they both hit the wall.  He then walked home and never saw her again.

{¶ 13} He admitted that at the time he lived near the victim.  He stated that from 2007–2009 he was in rehabilitation for a crack addiction; however, at the time he knew the victim, he claimed he was only an alcoholic.

{¶ 14} Based on the evidence, the jury found Croce guilty on all counts.  The trial court merged the two aggravated burglary counts and the two aggravated robbery counts.  The kidnapping counts were merged with one of the rape counts.  Thus, Croce was sentenced for one count of aggravated burglary, one count of aggravated robbery, three counts of rape, and one count of felonious assault.  The

3

trial court sentenced Croce to a total of 28 [sic] years to life in prison.[1] The trial court also classified Croce as a tier three sex offender.

*State v. Croce*, 2014 WL 1513981 at * 1-3 (Ohio App. 8th Dist. April 17, 2014).

## II. Procedural History

### A.    Trial Court Proceedings

On April 17, 2013, a Cuyahoga County Grand Jury charged Croce with (1) one count of Aggravated Burglary in violation of Ohio Rev. Code ("O.R.C.") § 2911.11(A)(1) (Count One); (2) one count of Aggravated Burglary in violation of O.R.C. § 2911.11(A)(2) (Count Two); (3) one count of Kidnapping in violation of O.R.C. § 2905.01(A)(2) (Count Three); (4) one count of Kidnapping in violation of O.R.C. § 2905.01(A)(4) with a sexual motivation specification pursuant to O.R.C. § 2941.147(A); (5) three counts of Rape in violation of O.R.C. § 2907.02(A)(2), each with a sexual motivation specification pursuant to O.R.C. § 2941.147(A) and a sexually violent predator specification pursuant to O.R.C. § 2941.148(A) (Counts Five, Six, and Seven); (6) one count of Felonious Assault in violation of O.R.C. § 2903.11(A)(1) (Count Eight); (7) one count of Aggravated Robbery in violation of O.R.C. § 2911.01(A)(1) (Count Nine); and (8) one count of Aggravated Robbery in violation of O.R.C. § 2911.01(A)(3) (Count Ten).  (Doc. No. 10-1, Exh. 1.)  Croce pled not guilty to all charges.  (Doc. No. 10-1, Exh. 2.)

On June 25, 2013, Croce waived his right to a jury trial as to the Sexually Violent Predator specifications on the Rape Charges in Counts Five, Six, and Seven.  (Doc. No. 10-1, Exh. 3.)

---

[1] As set forth below, Croce was sentenced to an aggregate of 38 years to life in prison.  (Doc. No. 10-1, Exh. 7.)

The case proceeded to jury trial commencing June 25, 2013.  (Doc. No. 10-2.)  Pursuant to Ohio Crim. R. 29, Croce moved for an acquittal at the close of the State's case, which the trial court denied.  (Doc. No. 10-1, Exh. 4.)  Croce renewed his Ohio Crim. R. 29 Motion for Acquittal after the defense rested and the state trial court again denied the motion.  (Doc. No. 10-1, Exh. 5.)  The jury found Croce guilty of the two Aggravated Burglary charges, the two Kidnapping charges with sexual motivation specifications, the three Rape charges with sexual motivation specifications, the Felonious Assault charge, and the two Aggravated Robbery charges.  (Doc. No. 10-1, Exh. 6.)  After a hearing, the trial court found Croce guilty of the sexually violent predator specifications attached to the three Rape convictions.  (Doc. No. 10-1, Exh. 7.)

On July 23, 2013, after a sentencing hearing, the trial court merged the two Aggravated Burglary convictions with each other, merged the two Kidnapping convictions with each other and with one of the Rape convictions, and merged the two Aggravated Robbery convictions with each other.  (Doc. No. 10-1, Exh. 7.)  The trial court sentenced Croce to 10 years in prison for the Aggravated Burglary conviction; 10 years to life in prison on each Rape conviction; 8 years in prison for the Felonious Assault conviction; and 10 years in prison for the Aggravated Robbery conviction.  (*Id.*)  The trial court ordered the Rape sentences to be served concurrently with each other, but consecutive to the Aggravated Burglary, Felonious Assault, and Aggravated Robbery sentences, for an aggregate sentence of 38 years to life in prison.  (*Id.*)

**B.      Direct Appeal**

On August 13, 2013, Croce, through new counsel, filed a Notice of Appeal to the Court of Appeals for Eighth Appellate District ("state appellate court").  (Doc. No. 10-1, Exh. 8.)  In

his appellate brief, Croce raised the following six assignments of error:

I.      The trial court erred in denying Appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction.

II.     Appellant's convictions are against the manifest weight of the evidence.

III.    The trial court denied Appellant's right to a fair trial erred by not giving a jury instruction on explaining how Appellant's prior convictions could only be used to weigh his credibility.

IV.     Appellant was denied effective assistance of counsel as guaranteed by the Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.

V.      The trial court erred by ordering Appellant to serve consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

VI.     The trial court erred by ordering Appellant to pay costs.

(Doc. No. 10-1, Exh. 9.) The State filed a brief in response. (Doc. No. 10-1, Exh. 10.)

On April 17, 2014, the state appellate court affirmed Croce's convictions and sentence.

(Doc. No. 10-1, Exh. 11.) *See also State v. Croce*, 2014 WL 1513981 (Ohio App. 8th Dist. April 17, 2014).

On May 21, 2014, Croce filed a Notice of Appeal to the Supreme Court of Ohio. (Doc. No. 10-1, Exh. 12.) In his jurisdictional memorandum, he raised the following Propositions of Law:

I.      Sufficiency of the Evidence and Manifest Weight.

II.     Jury Instructions and Ineffective Assistance of Counsel.

III.    Consecutive Sentences.

(*Id*.) The State did not file a response.

6

On September 3, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 10-1, Exh. 13.)

**C.      Federal Habeas Petition**

On July 22, 2015,[2] Croce filed a Petition for Writ of Habeas Corpus and asserted the following four grounds for relief:

> I.      Convictions are against the manifest weight of the evidence.
>
>> Supporting Facts: The record does not contain the requisite evidence which to show that Petitioner Croce broke into the victim's house and raped her.
>
> II.      Trial court erred in denying fair trial in the absence of jury instruction on prior convictions to only weigh credibility.
>
>> Supporting Facts: The record indicates that specific instructions on prior convictions were not presented to the jury impedes fundamental, statutory, and constitutional right to a fair trial.
>
> III.      Denial of effective assistance of defense counsel.
>
>> Supporting Facts: The record reveals that defense counsel failed to properly request jury instructions denied effective assistance of defense required by the Sixth and Fourteenth Amendments was prejudiced and affected the outcome of the trial.
>
> IV.      Trial court erred by ordering to serve consecutive sentences without due process of appropriate findings required by statute.
>
>> Supporting Facts: The trial court did not make the appropriate finding to justify the imposition for consecutive sentences pursuant to the R.C. 2929.14(C)(4) [enacted by HB 86], requires the trial court to modify the consecutive terms to be served as concurrent sentences, i.e., a maximum

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until August 31, 2015, Croce states he placed it in the prison mailing system on July 22, 2015.  (Doc. No. 1-2 at 17.)  Thus, the Court will consider the Petition as filed on July 22, 2015.

of 10 years to life.

(Doc. No. 1-2.)  Respondent filed her Return of Writ on December 9, 2015.  (Doc. No. 10.)

Croce filed his Traverse on February 29, 2016, to which Respondent replied on March 14, 2016.

(Doc. Nos. 18, 19.)

### III.  Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct.

2059, 138 L.Ed.2d 481 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the

dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S. Ct.

2148, 2155, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866

(2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel

v. Warren,* 838 F.3d 685, 695 (2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).

Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court." *Parker*, 132 S.Ct. at 2155. *See also Lopez v. Smith*, ––– U.S. ––––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, ––– U.S. ––––, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.  See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

9

state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### IV. Analysis of the Petition

### A.      Ground One

In Ground One of his Petition, Croce argues his conviction is against the manifest weight of the evidence because "the record does not contain the requisite evidence which to show that [he] broke into the victim's house and raped her."  (Doc. No. 1-2 at 7.)  Respondent asserts this claim should be dismissed because it is not cognizable in federal habeas proceedings.  (Doc. No.10.)  Respondent also argues that, even if this claim were construed as challenging the sufficiency of the evidence, the state appellate court's sufficiency determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  (*Id*. at 18.)

Croce's manifest weight of the evidence claim is rejected on the grounds that such claims

10

are not cognizable on federal habeas review.[3]  It is well established that federal habeas corpus

relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v.*

*Corcoran*, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010 ).  A claim that a conviction is

against the manifest weight of the evidence rests solely on state law and is not a cognizable

claim in a federal habeas petition.  *Norton v. Sloan*, 2017 WL 525561 at * 4 (N.D. Ohio Feb. 9,

2017).  *See also Swain v. Lazaroff*, 2016 WL 6605140 at * 15 (N.D. Ohio May 23, 2016) ("A

manifest weight of the evidence claim . . . raises an issue of state law only that is not cognizable

in a federal habeas corpus proceeding"); *Glenn v. Bunting*, 2015 WL 1843054 at * 8 (N.D. Ohio

April 22, 2015) (same);  *Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011)

("Whether a conviction is against the manifest weight of the evidence is purely a question of

Ohio law," citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (Ohio 1997)).

Accordingly, Croce's manifest weight of the evidence claim as set forth in Ground One should

be dismissed as it is not cognizable in these federal habeas proceedings.

> As Respondent correctly notes, the Petition does not assert a sufficiency of the evidence

claim.  However, even if the Court were to liberally construe Croce's *pro se* Petition as raising

such a claim, the Court finds it to be without merit.  On direct appeal, Croce argued both that the

---

[3]  As explained by the U.S. District Court for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence– as opposed to one based upon insufficient evidence– requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine 'whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at * 7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)).  As set forth above, because a federal court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Croce's conviction was against the manifest weight of the evidence.  *Id*.

evidence was insufficient to sustain a conviction, and that his convictions were against the

manifest weight of the evidence.  (Doc. No. 10-1, Exh. 9.)  The state appellate court considered

these claims together and rejected them, as follows:

> {¶ 15} We will address Croce's first and second assigned errors together.  Croce argues under both assigned errors that his physical interaction with the victim was consensual, that her face was injured when he tripped and pushed her into the wall, and that the fact there were no footprints under the bathroom window show that he did not climb through the bathroom window.
>
> {¶ 16} Croce argues that his convictions are not supported by sufficient evidence. However, if the victim's version of events is believed, then there was sufficient evidence that Croce committed aggravated burglary by entering the home with the intent to commit rape, raped the victim three times, committed felonious assault by hitting her so hard he fractured her cheek bone, and committed aggravated robbery by taking money from the victim's purse.
>
> {¶ 17} In determining whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 104, 651 N.E.2d 965 (1995).  Based on the victim's version of events, there was sufficient evidence to support the convictions.
>
> {¶ 18} What Croce is actually arguing is that his convictions were against the manifest weight of the evidence because he contends the victim's testimony was not credible given that it conflicted with his version of events.
>
> {¶ 19} In *State v. Wilson*, 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:
>
> > The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541.  In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively.  *Id*. at 386, 678 N.E.2d 541.  The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the

12

evidence's effect of inducing belief.  *Id*. at 386–387, 678 N .E.2d 541.
In other words, a reviewing court asks whose evidence is more
persuasive—the state's or the defendant's?  We went on to hold that
although there may be sufficient evidence to support a judgment, it
could nevertheless be against the manifest weight of the evidence.  *Id*.
at 387, 678 N.E.2d 541.  "When a court of appeals reverses a judgment
of a trial court on the basis that the verdict is against the weight of the
evidence, the appellate court sits as a 'thirteenth juror' and disagrees
with the factfinder's resolution of the conflicting testimony."  *Id*. at 387,
678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102
S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

{¶ 20} There is no dispute that Croce's DNA was found on the victim's body.
Croce originally told police he did not know the victim and had never been to her
house and could not explain how his DNA got on the victim's body.  However, at
trial, he changed his story and stated that he did know the victim and that he had
engaged in physical conduct with her.  He claims he did not realize who the
victim was until he was shown a photograph of her.

{¶ 21} It was within the jury's discretion to weigh Croce's testimony against the
victim's.  Given the testimony of the nurse and the responding officer that the
victim was extremely upset after the event, and the fact there was a bruise on her
neck where the victim stated a sharp instrument was pushed against her throat, we
cannot say the jury lost its way in resolving the conflicting evidence.  Moreover,
if the victim and Croce did know each other, and she was trying to frame Croce
because he spurned her advances, it is likely that she would have told the officers
that he was the man she frequently saw walking to the neighborhood bar, instead
of merely providing a vague physical description of him.

{¶ 22} Croce also argues that because there were no footprints under the window
where the assailant allegedly entered the home, shows the victim was lying.
However, the photographs show that the area under the window is grass.
Therefore, the fact that there were no footprints does not show that the victim was
lying because footprints are not normally left on grassy areas.  Accordingly,
Croce's first and second assigned errors are overruled.

*State v. Croce*, 2014 WL 1513981 at * 3-4.

Respondent argues "the state court reasonably applied the correct review standard

derived from *Jackson* and did not act contrary to clearly established Supreme Court precedent."

13

(Doc. No. 10 at 19.)  She further maintains "it was objectively reasonable for the fact-finder and reviewing appellate court to conclude that there was sufficient evidence to convict Croce." [4] (*Id.*)

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000).  The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  It is the province of the factfinder to weigh the probative value of the evidence and

---

[4] In his Traverse, Croce argues he is entitled to relief on his manifest weight of the evidence claim because "the prosecutor committed misconduct by knowing that the evidence possessed by the prosecutor's office should not have been sufficient to convict Croce, yet, it proceeded to trial nonetheless."  (Doc. No. 18 at 3.)  He maintains "because the case hinged on a credibility determination, the misconduct infected the trial with unfairness such that his conviction violates due process." (*Id.*)  Croce, however, does not raise a prosecutorial misconduct claim in his Petition.  The Sixth Circuit has held a district court does not err in declining to address claims first raised in a traverse rather than in the habeas petition. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  *See also Smith v. Bagley*, 2014 WL 1340066 at fn 15 (N.D. Ohio April 13, 2014); *Palmer v. Bagley*, 2005 WL 3965400 (S.D. Ohio, Dec.16, 2005) *report and recommendation adopted by* 2006 WL 1027733 (S.D. Ohio April 17, 2006)("A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus."); *Burns v. Birkett*, 2007 WL 2318740, *5, n. 2 (E.D. Mich. Aug.9, 2007) ("Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court.").  Here, Croce filed his Petition nearly two years ago, on July 22, 2015, and failed to raise any habeas claims relating to alleged prosecutorial misconduct.  (Doc. No. 1-2.)  Nor has he sought leave to amend his Petition to assert such a claim.  Croce's Traverse is not the proper vehicle in which to raise a new habeas claim and, therefore, the Court finds any such claim is not properly before this Court.

14

> resolve any conflicts in testimony.  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).

Moreover, it is well established that '"attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984)).

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its

15

conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Id*. (emphasis in original) (citing *Knowles*, 129 S.Ct. at 1420.

Upon careful review of the trial transcript, the Court finds Croce's conviction is supported by substantial evidence.  In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law.  As noted in the state appellate court decision, the victim, Virginia Oravis, testified that, on the night of July 19, 2006, she went to sleep at approximately 10 p.m. and was awakened by the sound of her bathroom window being opened.  (Doc. No. 10-3, Tr. 330-331, 335.)  The lights were off and it was dark.  (*Id.* at Tr. 335-336.)  She asked "who are you?" and a man standing in her hallway said "Steve."  (*Id*. at Tr. 331.)  The man pushed Ms. Oravis onto the bed and threw a pillow on her face.  (*Id*. at Tr. 336.)  Ms. Oravis testified the man took her underwear off, put something sharp on her neck, called her a bitch, and told her he would slit her throat if she made a sound. (*Id*. at Tr. 336-337)  He then punched her on her left cheek and she "actually saw stars."  (*Id*. at Tr. 337)  Ms. Oravis testified the man put his penis in her mouth and vagina, and inserted his finger in her anus.  (*Id*. at Tr. 338.)

At one point, she told the man she could not breathe because of the pillow on her face, and he replaced it with a blanket.  (*Id*. at Tr. 339.)  She could not see his face, but she smelled tobacco.  (*Id*.)  Ms. Oravis testified the man tried to kiss her on her mouth and used his tongue to kiss her breasts.  (*Id*. at Tr. 340; Doc. No. 10-4 at Tr. 397-398.)  When he was finished, the man emptied her purse and took $2.00.  (Doc. No. 10-3 at Tr. 341.)  Ms. Oravis heard the front door open and the man was gone.  (Doc. No. 10-4 at Tr. 346.)

16

After the man left, Ms. Oravis testified she got out of bed, put on clean underwear, and went into the bathroom. (*Id*. at Tr. 347.) She noticed the screen on her bathroom window had been cut. (*Id*. at Tr. 349.) After using the toilet, she called the police and told them she had been raped. (*Id*. at Tr. 351.) The police arrived shortly thereafter and collected evidence, took photographs, and dusted for fingerprints. (*Id*. at Tr. 351-352.) She was transported by EMS to Marymount Hospital, where she was told her cheekbone had been fractured. (*Id*. at Tr. 352-353.) A rape kit was completed and photographs were taken of her injuries. (*Id*. at Tr. 353-355.) Ms. Oravis testified that, later, she made a statement to the police recounting the assault. (*Id*. at Tr. 355.) She told police she did not know who the intruder was and had never seen him before. (*Id*.) Some time later, police showed her photographs of various men, but she did not recognize any of them as her assailant. (*Id.* at Tr. 359-360.)

The State then presented the testimony of registered nurse Michelle Schreiber. Nurse Schreiber testified she was a trained Sexual Assault Nurse Examiner ("SANE") nurse at Marymount Hospital at the time of the assault, and that she examined Ms. Oravis at approximately 4:45 a.m. on the morning of July 19, 2006. (Doc. No. 10-4 at Tr. 429-430, 433-437.) Nurse Schreiber described her initial assessment of Ms. Oravis as follows: "I saw a very upset woman with a black eye and tearful, a little disheveled." (*Id*. at 438.) She stated Ms. Oravis had bruising and swelling to her left cheek and eye; abrasions on the left side of her neck; and bruises on her left upper arm. (*Id*. at Tr. 438-439.) Ms. Oravis reported a man had put his penis and finger into her vagina; put his finger in her anus; orally raped her; and fondled and licked her breasts and neck. (*Id*. at Tr. 442-443.) Nurse Schreiber took photographs of Ms. Oravis' injuries, which she authenticated at trial. (*Id*. at Tr. 450.) She testified she conducted a

SANE examination of Ms. Oravis, which included taking oral, vaginal, and anal swabs.  (*Id*. at

Tr. 447.)  Nurse Schreiber also testified she took "dry stain swabs" of Ms. Oravis's neck and

breasts because the assailant had licked her there.  (*Id*. at Tr. 448, 452.)  Nurse Schreiber stated

that, throughout the examination, Ms. Oravis was tearful, but alert and coherent, clear in her

answers, and not disoriented.  (*Id*. at Tr. 453, 459.)

Ohio Bureau of Criminal Investigation forensic scientist David Niemeyer then testified

regarding the DNA analysis of Ms. Oravis' rape kit.  (*Id*. at Tr. 461, 467-479.)  He stated no

semen was found in either the vaginal, anal, or oral samples.  (*Id*. at Tr. 470.)  Mr. Niemeyer

indicated no seminal fluid was detected in the "dry stain swabs" of Ms. Oravis' right and left

breasts, and neck; however, a substance called amylase was identified in these samples.  (*Id*.)

Mr. Niemeyer explained amylase was found in saliva, and DNA can be extracted from saliva.

(*Id*. at Tr. 470-471.)  He then testified the DNA profiles of swabs from Ms. Oravis' breasts and

neck were similar mixtures from Ms. Oravis and an unknown male.  (*Id*. at Tr. 474.)  Mr.

Niemeyer further testified as follows:

> A:   The DNA profiles from the swabs R. breast. . .; swabs L. breast . . . ;
>       and swabs Neck . . . , resulted in mixtures consistent with contributions
>       from Virgina Oravis and Paul R. Croce.  And there was also
>       conclusions and statistical information involved in this.  Paul R. ---
>
> Q:   Yes, what was the conclusion and statistical information?
>
> A:   Paul R. Croce cannot be excluded as a contributor to the DNA from the
>       swabs R.  breast, swabs L. breast, and swabs Neck.
>
> Q:   What does that mean, Paul R. Croce cannot be excluded?
>
> A:   It means looking at the DNA profile generated from his known standard
>       and comparing it to these profiles, you can't look at that and say that he
>       is not a contributor.  You're saying everything there says that – there's
>       nothing there to rule him out, basically.  So then now a statistic is done

18

> to give weight to this information, and based on the national database
> provided by the Federal Bureau of Investigation, the expected
> frequency of occurrence of the DNA profile not attributed to Virginia
> Oravis from the swabs R breast . . ., swabs L breast . . ., and swabs
> Neck . . . , is one is 202 quadrillion, 300 trillion unrelated individuals.

> Q:    What does that mean, the one in 202 quadrillion, 300 trillion unrelated
>       individuals?

> A:    It basically means that the rarity of this profile is that in order to see
>       this profile in the population you would need to test 202 quadrillion,
>       300 trillion unrelated individuals in order to see this profile one time.

(*Id.* at Tr. 478-479.)

The State next presented the testimony of Cleveland Police officer Stephen Zedella. Officer Zedella was a patrol officer during the summer of 2006 and responded to Ms. Oravis' home during the early morning hours of July 19, 2006.  (*Id.* at Tr. 495, 498-499.)  Officer Zedella testified that, when he arrived at the scene, Ms. Oravis had "a lot of swelling to the left side of her face," and was very upset and crying.  (*Id.* at Tr. 500.)  He stated Ms. Oravis reported she had been raped and assaulted.  (*Id.*)  She described the suspect as a white male, approximately 40 years old, 6 feet tall with short brown hair, and wearing knee length shorts. (*Id.* at Tr. 501.)  Officer Zedella noticed the screen was cut on the bathroom window and the contents of Ms. Oravis' purse were "strewn about" the floor.  (*Id.* at Tr. 502-503.)  Officer Zedella immediately called for EMS, a supervisor, and a scientific investigation unit.  (*Id.* at Tr. 503.)  He testified he did not see any footprints on the aluminum siding of the house near the bathroom window, nor did he see any imprint of a ladder, step stool, or bicycle in the grass.[5]

---

[5] Officer Zedella also testified Ms. Oravis indicated a friend of her son's was named "Steve" (Stephen McDonald) and lived not far from her house.  Officer Zedella went to Mr. McDonald's house and questioned him that night.  Mr. McDonald was 5'7" and had black hair.  He was calm and cooperative.  Officer Zedella noticed two dollar bills on Mr. Mc

(*Id*. at Tr. 516-517.)

Cleveland Police Detective Keith Hunter testified he took a statement from Ms. Oravis several weeks later.  (*Id*. at Tr. 531, 534.)  The case was open but unsolved for "awhile," but they eventually got an "investigative lead" regarding Paul Croce in the form of the DNA match from the dry stain swabs of Ms. Oravis's breasts and neck.  (*Id*. at Tr. 539, 542-543, 549.)  A photo array containing a picture of Croce was presented to Ms. Oravis, but she was not able to identify anyone as the assailant.  (*Id*. at Tr. 540-541.)  Detective Hunter testified he arrested Croce and interviewed him at the police station in 2013.  (*Id*. at Tr. 543-544.)  Croce allowed Hunter to collect a DNA sample.  (*Id*. at Tr. 544.)  He admitted he had lived not far from Ms. Oravis' home in July 2006, but denied knowing her or knowing anybody who lived on Canton Avenue.  (*Id*. at Tr. 545-548.)  Croce stated he had been with "older women," but stated he did not know how his DNA would have gotten on Ms. Oravis and indicated it must not be his DNA. (*Id*. at Tr. 550.)  He denied breaking into Ms. Oravis' home or committing any crime.  (*Id*. at Tr. 548, 550.)  On cross examination, Detective Hunter acknowledged he did not show Croce a picture of Ms. Oravis during the interview.  (*Id*. at Tr. 566-568.)

Croce testified in his own defense.  On direct examination, he acknowledged he had been convicted of several criminal offenses, including safecracking, burglary, attempted breaking and entering, disorderly conduct, and driving under suspension.  (Doc. No. 10-5 at Tr. 587-588.)  He stated he had pled guilty to these offenses, and served two prison terms.  (*Id*.)

---

Donald's table.  They did not arrest him, but considered him a person of interest.  (*Id*. at Tr. 504-507.)  Cleveland Police Detective Keith Hunter testified that, when he spoke to Ms. Oravis a few weeks later, she was "adamant" that Mr. McDonald was not the man who attacked and raped her.  (*Id*. at Tr. 538.)

Croce acknowledged that, when Detective Hunter asked him if he knew Ms. Oravis, he answered no.  (*Id*. at Tr. 591-592.)  However, Croce testified he did, in fact, know Ms. Oravis and just had not recalled her name when he was interviewed by Detective Hunter in 2013.  (*Id*.)  Croce testified that, in 2006, he and Ms. Oravis were "somewhat friends."  (*Id*. at Tr. 592.)  He knew her because he used to pass her house every night coming home from a nearby bar, and often saw her working in her yard.[6]  (*Id.* at Tr. 594.)  Croce indicated they would talk every couple days.  (*Id*. at Tr. 595.)  One day, they were sitting on her back stairs and began kissing.  (*Id.* at Tr. 595-596.)  They went into her house, sat on the bed, and he kissed her on her mouth and neck.  (*Id*. at Tr. 598.)  He pulled her shirt down and kissed the top of her breasts.  (*Id.*)  Croce testified he then saw a big, red scar[7] on Ms. Oravis' chest "and it just freaked [him] out a little bit and [he] stopped."  (*Id*.)  He lay down, fell asleep, and woke up some time later.  (*Id*. at Tr. 599.)  He told Ms. Oravis that "I can't do this, I got a girlfriend."  (*Id*. at 600.)

Croce testified Ms. Oravis became upset and started yelling at him to get out of her house.  (*Id*. at Tr. 600.)  Croce stated he started walking out but tripped and fell into Ms. Oravis and they both hit the wall.  (*Id*.)  He testified Ms. Oravis screamed, and he left and never saw her again.  (*Id*. at 600-601, 605, 625-626.)  Croce denied cutting Ms. Oravis' bathroom window screen or going through her window.  (*Id*. at Tr. 601-604.)  He denied threatening her, raping her, or committing any crime against her.  (*Id*. at Tr. 606-607, 610.) Croce stated he only

---

[6] Croce testified that, in 2006, he lived a block from Ms. Oravis' house and was familiar with the Slavic Village area.  (*Id*. at Tr. 613, 616, 628.) He stated he was in a rehab facility from 2007 to 2009 for drug and alcohol addiction.  (*Id*. at Tr. 613-614.)  In 2006, he was an alcoholic but was not using crack cocaine.  (*Id.* at Tr. 615.)

[7] The scar on Ms. Oravis' chest appears to have been the result of open heart surgery.  (Doc. No. 10-5 at Tr. 713.)

became aware of who Ms. Oravis was when his defense counsel showed him a picture of her a few weeks before trial.[8]  (*Id.* at Tr. 605-606.)

The Court finds the state appellate court reasonably determined Croce's convictions are supported by substantial evidence.  Ms. Oravis testified a man entered her home through the bathroom window, shoved her on the bed, covered her face with pillow, held a knife to her throat, threatened to kill her if she screamed, punched in her the face, raped her repeatedly, and stole money from her purse.  Nurse Schreiber testified Ms. Oravis was upset and crying when she arrived at the ER, and presented with several injuries including bruising and swelling on her left cheek and eye, abrasions on the left side of her neck, and bruises on her left upper arm.  Forensic scientist David Niemeyer testified DNA analysis of the "dry stain" swabs of Ms. Oravis' neck and breasts revealed Croce could not be ruled out as a contributor.  Mr. Niemeyer further explained "in order to see this profile in the population you need to test 202 quadrillion, 300 trillion unrelated individuals in order to see this profile one time."  (Doc. No. 10-4 at Tr. 478-479.)

While Croce argues the jury should have acquitted him on the basis of his testimony at trial, the credibility of witnesses' testimony was outside the scope of the state appellate court's consideration of Croce's claim of insufficient evidence.  *Martin*, 280 F.3d at 618.  Rather, the state appellate court properly considered all of the evidence in the light most favorable to the State and determined there was sufficient evidence to convict him of aggravated burglary, kidnapping, felonious assault, rape, and aggravated robbery.  The state appellate court properly

---

[8] Ms. Oravis testified she never knew, saw, or had any contact with Croce prior to the assault. (Doc. No. 10-4 at Tr. 360.)

22

applied the correct standard of review for sufficiency of the evidence as set forth in *Jackson*.

Croce points to no federal legal precedent requiring the state appellate court, in the context of a

challenge to the sufficiency of the evidence, to engage in the evidence weighing that he

requests.

Accordingly, the Court finds the state appellate court reasonably applied clearly

established federal law when it rejected Croce's argument that there was insufficient evidence

to support his convictions.  It is therefore recommended Croce's First Ground for Relief be

denied.

**B.      Grounds Two and Three**

As Grounds Two and Three are related, the Court will address them together.  In his

Second Ground for Relief, Croce argues he was deprived of a fair trial when the trial court failed

to give specific jury instructions regarding his prior convictions.  (Doc. No. 1-2 at 9.)  In his

Third Ground for Relief, Croce maintains defense counsel was ineffective in failing to request

jury instructions regarding this issue.  (*Id*. at 10.)

The record reflects that, while the state trial court gave a general instruction to the jury

regarding assessing the credibility of witnesses,[9] it did not specifically instruct the jury that

---

[9] Specifically, the trial court instructed the jury as follows: "Ladies and gentlemen, you, the jury, are the sole judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony of each witness. To weigh the evidence, you consider credibility or the believability of each person testifying, and you will apply the test for truthfulness that you apply in your daily lives.  These tests include the interest or bias one has in the outcome of the verdict; the witnesses' appearance, manner, and demeanor while testifying before you; the witnesses' candor and frankness, or lack of candor or frankness; the consistency of the witnesses' testimony with other known facts in this case; the witnesses' accuracy of memory or inaccuracy of memory; the witnesses' intelligence of lack of intelligence; the reasonableness or unreasonableness of the witnesses' testimony; the opportunity the witness has to see or hear or know the truth of the facts and circumstances concerning the things to

evidence regarding Croce's prior convictions could not be considered to prove Croce's character

or that he acted in conformity with that character.  (Doc. No. 10-5 at Tr. 641-642.)  Neither

party directs this Court's attention to anything in the record demonstrating defense counsel

requested such a limiting instruction or otherwise objected to the jury instructions on this

basis.[10]

     Croce raised his Second and Third Grounds for Relief on direct appeal.  (Doc. No. 10-1,

Exh. 9.)  The state appellate court rejected them as follows:

> {¶ 23} Croce's third and fourth assigned errors will be addressed together.  Croce
> argues the trial court committed error in failing to give a limiting instruction to
> the jury that it could only consider Croce's prior convictions in relation to his
> credibility.  Alternatively, Croce argues that counsel was ineffective for failing to
> request a limiting instruction regarding his prior convictions.

> {¶ 24} The Supreme Court of Ohio has previously expressed its reluctance to
> impose a duty on the trial court to *sua sponte* issue a limiting instruction in
> response to the admission of other acts evidence.  In *State v. Schaim*, 65 Ohio
> St.3d 51, 61, 600 N.E.2d 661 (1992), fn. 9, the court explained:

>> The defendant * * * claims that it was plain error for the trial court

---

which the witness has testified; and any or all other facts and circumstances surrounding the
testimony which, in your judgment, would add or detract from the credibility and weight of
the witnesses' testimony.  Ladies and gentlemen, applying these tests you will assign to the
testimony of each witness the weight which you determine to be proper.  You are instructed
that you are not required to believe the testimony of any witness simply because he or she
was under oath.  If you believe from all the evidence that a witness was mistaken or has
testified untruthfully to a fact, you're not required to believe the testimony simply because
he or she was under oath.  You may believe or disbelieve all or any portion of the testimony
of any witness.  Remember, it is in your province as a juror to determine in the exercise of
your honest and impartial judgment what testimony is worthy of belief and what testimony
if not worthy of belief."  (Doc. No. 10-5 at 641-643.)  The trial court then went on to explain
some things the jury could consider in weighing the testimony of an identifying witness.  (*Id.*
at Tr. 643-644.)

[10] During closing argument, however, defense counsel expressly argued that "someone's past
behavior is not evidence of the alleged crime today."  (Doc. No. 10-5 at Tr. 697.)

24

to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney.  We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested.

{¶ 25} Here, defense counsel failed to request such a limiting instruction. Therefore, the trial court did not err by failing to instruct the jury.

¶ 26} Croce also argues counsel was ineffective for failing to request such an instruction.  To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness.  *Strickland* at 688.

{¶ 27} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.* at 689.  To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694.

{¶ 28} As the Supreme Court in *Schaim* acknowledged, the decision whether to request such an instruction is tactical.  Therefore, counsel's failure to request the instruction could have been tactical.  Moreover, even if counsel should have requested the instruction, Croce has failed to demonstrate that but for this error, the outcome of trial would have been different.  When he was arrested Croce denied knowing the victim; at trial, he testified he knew the victim and had physical contact with her in an attempt to explain how his DNA got on the victim. The victim, the nurse, and the responding officer, all testified to the victim's mental state; she was upset and crying.  Also, if the victim was framing Croce for spurning her advances, surely she would have told the officers who her assailant was.  She could not even identify Croce as her attacker from the photo array.

{¶ 29} Moreover, the record shows the trial court did give a general instruction regarding judging the credibility of witnesses.  In *State v. Cobbins*, 8th Dist. Cuyahoga No. 82510, 2004–Ohio–3736, this court held that counsel's failure to request a limiting instruction, when the court gave a general instruction on credibility, does not constitute ineffective assistance of counsel.  Accordingly, we conclude no prejudice resulted. Croce's third and fourth assigned errors are overruled.

25

*State v. Croce*, 2014 WL 1513981 at *4-5. Croce timely appealed and raised these claims to the Ohio Supreme Court, which declined jurisdiction.  (Doc. No. 10-1, Exh. 12.)

The Court will address each of these grounds separately, below.

**1.  Ground Two– Jury Instructions**

In his Second Ground, Croce argues he was deprived of a fair trial when the trial court failed to give specific jury instructions regarding his prior convictions.  (Doc. No. 1-2 at 9.)  He maintains his due process rights were violated because "[h]is prior criminal history was not used for sentencing purposes, but was erroneously used by the jury to assume that since Croce had a prior criminal record, he is also guilty of these offenses."  (Doc. No. 18 at 4.)  He argues "[t]his is a clear violation of Croce's rights to due process and a fair trial protected by Federal (and State) Constitutional rights."  (*Id*. at 4-5.)

Respondent asserts this ground is non-cognizable to the extent it alleges a violation of state law.  (Doc. No. 10 at 20.)  She then emphasizes Croce's failure to request a limiting instruction and argues, summarily, "the state appellate court's plain error review constituted enforcement of Ohio's contemporaneous objection rule and is a valid reason to preclude § 2254 habeas review and relief because Croce has not established cause and actual prejudice, or a manifest injustice to excuse his procedural default."  (*Id*.)

As set forth above, the state appellate court determined the trial court did not err in failing to specifically instruct the jury regarding Croce's prior convictions, citing Ohio Supreme Court authority that trial courts are not required to *sua sponte* give a limiting instruction on the use of other acts evidence because counsel's decision not the request a limiting instruction "is sometimes a tactical one."  *Croce*, 2014 WL 1513981 at * 4.

Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings ... unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981)). *See also Herrington v. Lazaroff*, 2015 WL 3687681 at * 29-30 (N.D. Ohio June 11, 2015). As the Sixth Circuit recently explained in *Wade v. Timmerman-Cooper*, 785 F.3d 1059 (6ᵗʰ Cir. 2015):

> The Supreme Court has made clear that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). As expressed by this court, a habeas petitioner's claimed error regarding "jury instructions must be so egregious that [it] render[ed] the entire trial fundamentally unfair. Without such a showing, no constitutional violation is established and the petitioner is not entitled to relief." *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir.2005) (internal citation omitted). In our review, "[t]he only question" is whether the absence of the limiting instruction " 'so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Furthermore, we must "bear in mind" the Supreme Court's "admonition" that it has "'defined the category of infractions that violate fundamental fairness very narrowly.' " *Id*. at 72–73, 112 S.Ct. 475 (quoting Dowling, 493 U.S. at 352, 110 S.Ct. 668).

*Wade*, 785 F.3d at 1077-1078.

Here, the Court need not decide whether to apply AEDPA deference or conduct a *de novo* review of the state appellate court decision on this issue because, under either standard, Croce's argument is without merit.[11]  Specifically, Croce has not demonstrated the failure to give

---

[11]  Respondent argues, summarily, that this claim is procedurally defaulted because Croce did not contemporaneously object at trial and the state appellate court reviewed the claim under a plain error analysis. The Court, however, is not entirely convinced the state appellate court conducted a "plain error review" of this claim. The state appellate court does not explicitly cite Ohio's plain error standard, nor does it expressly find that the trial court's failure to give a limiting instruction on this issue did not constitute plain error. *See State v. Jackson*, 149 Ohio St.3d 55, 84 (Ohio 2016) ("A party claiming plain error must show (1)

a limiting instruction regarding his prior convictions was an error "so egregious" that it rendered his entire trial fundamentally unfair.  *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005).  Upon careful review of the trial transcript, the Court finds that evidence of Croce's prior convictions was not the critical factor in the case against him.  Rather, the State's case rested principally upon Ms. Oravis' testimony, evidence of her injuries, the DNA evidence, the testimony of the nurse involved in treating her, and the testimony of the police officers investigating the case.  Moreover, the Court finds that, read as a whole, the trial court's charge made it clear to the jury that Croce was on trial for the pending charges, and not because of any general propensity to commit crimes.  Additionally, defense counsel expressly addressed the issue in closing, arguing "someone's past behavior is not evidence of the alleged crime today."  (Doc. No. 10-5 at Tr. 697.)

---

that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial.") (citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim. R. 52(B)).  The only mention of plain error occurs in the state appellate court's block quotation from an Ohio Supreme Court decision.  However, it is not apparent to this Court that the state appellate court itself undertook a plain error analysis with respect to this claim.  The Court need not decide this issue, however, because federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ( "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  Indeed, courts within this Circuit have relied on *Lambrix* to bypass a procedural default question when it was complicated and unnecessary to the court's determination of the case.  *See, e.g., Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir.2003); *Reed v. Jenkins*, 2016 WL 6311235 at * 6 (N.D. Ohio June 22, 2016) *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016); *Burkholder v. Sheldon*, 2016 WL 3658950 at * 5 (N.D. Ohio March 14, 2016) *report and recommendation adopted by* 2016 WL 3661440 (N.D. Ohio July 1, 2016).  As it is more straightforward to decide Croce's jury instruction claim on the merits, this Court declines to address whether it is procedurally  defaulted and will proceed directly to the merits of the claim.

28

In sum, Croce has not shown that the failure to give a limiting instruction regarding his prior convictions rendered his trial fundamentally unfair.  This is especially true in light of the Supreme Court's recognition that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).  *See also Wade*, 785 F.3d at 1079.  Furthermore, this decision "comports with recent holdings by the Supreme Court and [the Sixth Circuit] establishing that a defense counsel's failure to request—or a trial court's failure to give—even an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction."  *Wade*, 785 F.3d at 1079.  Here, and as discussed in connection with Croce's First Ground for Relief, the state presented sufficient evidence to support Croce's convictions.

Accordingly, and in light of the above, it is recommended Croce's Second Ground for Relief be denied.[12]

---

[12] The Court also notes that Croce has not established he was entitled to a limiting instruction regarding his prior convictions as a matter of state law. Federal courts have rejected habeas claims based on a trial court's failure to give a limiting instruction where the other  acts evidence was clearly admissible under state law and no request for an instruction was made by defense counsel. *See e.g., Mackey v. Russell*, 148 Fed. Appx. 355, 361 (6th Cir. 2005) (finding "[s]ince the testimony at issue here was indeed admissible for the purposes of impeaching Whitmore, the lack of an instruction or other admonishment to the jury as to it use against [Defendant] cannot be reversible error, since no such instruction was requested."); *Martin v. Wilson*, 419 F.Supp.2d 976, fn 5 (N.D. Ohio 2006) (finding trial court did not err in failing to give limiting instruction because "the [other acts] evidence was clearly admissible and no request for an instruction was made by defense counsel").  Here, the evidence regarding Croce's prior convictions consisted of his own testimony elicited by defense counsel during direct examination.  Croce has not argued (either in state court or in these habeas proceedings) that this testimony was inadmissible or that defense counsel was ineffective for eliciting it during trial.  Thus, Croce has failed to demonstrate he was erroneously deprived of a limiting instruction to which he was entitled under state law.

2.       **Ground Three – Ineffective Assistance of Counsel**

In his Third Ground for Relief, Croce maintains defense counsel was ineffective in

failing to request a limiting instruction regarding his prior convictions.  (Doc. No. 1-2 at 10.)  He

argues he was severely prejudiced by counsel's failure to so, maintaining as follows:

> When Croce's attorney failed to object, it was not done so as a tactical maneuver,
> it was incompetence.  Simply put, had Croce's attorney objected to the jury
> instructions it would likely have rendered a not guilty verdict.  As Croce's
> attorney failed to perform his [sic] duties competently, the jury considered facts
> that it should not have (Croce's prior criminal history) and it returned a guilty
> verdict.  These two acts clearly prejudiced Croce in that he would have been
> acquitted if these injustices were not committed as jury's [sic] today see a prior
> criminal history negatively and the weight of the evidence presented at trial were
> not the factors the jury considered alone, but Croce's prior criminal acts.  As it is
> not concrete that the jury considered only the facts of the case at hand it violated
> Croce's rights.

(Doc. No. 18 at 4-5.)

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard

of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1998), which

requires a petitioner to demonstrate both that his counsel's performance was deficient, and that

the allegedly ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to
> require reversal of a conviction or death sentence has two components.  First, the
> defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a

30

petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable—a substantially higher threshold.") (internal quotation marks omitted).  When reviewing a state court's ruling on an ineffective assistance of counsel claim, federal habeas courts must employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ––– U.S. ––––, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

The United States Supreme Court has emphasized that, in determining whether counsel performed deficiently under *Strickland*, "[w]e begin with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy." *Pinholster*, 131 S.Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689).  Indeed, *Strickland* commands reviewing courts to "affirmatively entertain the range of possible 'reasons [defense] counsel may have had for proceeding as they did,'" *Pinholster*, 131 S.Ct. at 1407, and "indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 689-90, 692.[13]  *See also Holmes v. Goodrich*,

---

[13] Like federal law, Ohio law regarding ineffective assistance claims requires reviewing courts to be highly deferential of trial counsel's strategic decisions. *See State v. Carter*, 651 N.E.2d 965, 977, 72 Ohio St.3d 545, 558 (Ohio 1995) ("Judicial scrutiny of counsel's

2015 WL 127925 at * 16 (N.D. Ohio Jan. 8, 2015) ("Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective.")  The mere fact that a trial strategy was unsuccessful is not sufficient to support a conclusion that trial counsel's performance was deficient.  *See Kelly v. Lazaroff*, 2015 WL 4546996 at * 11 (N.D. Ohio July 28, 2015).  *See also State v. Conway*, 848 N.E.2d 810, 832, 109 Ohio St.3d 412, 432–33 (Ohio 2006) ("That this strategy was unsuccessful and the jury ultimately found Conway guilty ... is not a basis for finding ineffective assistance of counsel. Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight.").

Respondent asserts the state appellate court reasonably determined defense counsel was not ineffective for failing to request a limiting instruction regarding Croce's prior convictions. (Doc. No. 10.)  For the following reasons, the Court agrees.

Federal courts have consistently determined that a decision by counsel not to request a limiting instruction can be a sound tactical decision not to emphasize the prior conviction before the jury.  *See e.g., Ashe v. Jones*, 2000 WL 263342 at *6 (6th Cir. Feb. 29, 2000) (stating that counsel may have decided, as part of a reasonable trial strategy, not to request an instruction limiting the jury's consideration of the prior bad acts evidence based on the belief that such an

---

performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."); *State v. Smith*, 731 N.E.2d 645, 652, 89 Ohio St.3d 323, 328 (Ohio 2000) ("Yet, even if we viewed counsel's trial strategy as questionable, such a strategy should not compel us to find ineffective assistance of counsel. In these situations, we normally defer to counsel's judgment.").

instruction would bring undue attention to the other acts); *Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir.1987) (limiting instructions "inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize"); *Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir.1987) (failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that ... counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"); *Robins v. Fortner*, 698 F.3d 317, 337-338 (6th Cir. 2012) (finding no ineffectiveness because counsel "may have . . . made a tactical choice not to provide curative jury instructions to avoid drawing further attention to the fact that the pictures were mug shots").  Thus, many federal habeas courts have rejected claims of ineffective assistance of trial counsel based on counsel's failure to request limiting instructions relating to evidence of prior bad acts.  *See Martin v. Wilson*, 419 F.Supp.2d 976, fn 7 (N.D. Ohio 2006) (finding counsel was not ineffective for failing to request a limiting instruction regarding prior conviction because "it was reasonable trial strategy to avoid calling any further attention to this prior conviction which was only briefly mentioned at trial"); *Smith v. Howerton*, 2015 WL 5749440 at * 23-24 (E.D. Tenn. Sept. 30, 2015); *Towle v. Warren*, 2014 WL 2879752 at * 14 (E.D. Mich. June 24, 2014); *Martin v. Rivard,* 2013 WL 5902624 at * 9 (E.D. Mich. Oct. 31, 2013); *Barnes v. Bradshaw*, 2012 WL 2905816 at * 28 (N.D. Ohio June 7, 2012).  Indeed, the Sixth Circuit has noted "the vast majority of courts hearing ineffective assistance claims based on failure to request a limiting instruction have determined that no prejudice resulted from counsel's failures."[14]  *Mackey v.*

---

[14] White cited by neither party, the Court notes the Sixth Circuit granted habeas relief in *Mackey v. Russell*, 148 Fed. Appx. 355 (6th Cir. 2005) based, in part, on counsel's failure to request a limiting instruction as to a petitioner's prior bad acts.  *See Mackey*, 148 Fed. Appx.

*Russell*, 148 Fed. Appx. 355 at * 9 (6th Cir. 2005).

The Court finds the state appellate court reasonably concluded, pursuant to *Strickland*, that counsel's failure to request limiting instructions regarding Croce's prior convictions did not constitute ineffective assistance of counsel.  As the state appellate court noted, counsel's failure to request such an instruction may have constituted a tactical decision.  While defense counsel elicited testimony from Croce regarding his prior convictions on direct examination, it is not unreasonable to conclude she may have decided not to request a limiting instruction in order to avoid drawing further negative attention to Croce's prior criminal history.

Moreover, assuming *arguendo* counsel's decision not to request a limiting instruction rose to the level of deficient performance, Croce has failed to show a reasonable probability that, but for counsel's error, the outcome of trial would have been different.  As explained above, the State presented sufficient evidence upon which the jury could have found Croce guilty as charged in the indictment, including Ms. Oravis' testimony; DNA evidence linking Croce to the

---

355.  The Court finds *Mackey* is clearly distinguishable from the instant case.  In *Mackey*, the Sixth Circuit granted habeas relief based on the cumulative prejudicial effect of counsel's failure to request a limiting instruction, failure to object to lengthy testimony as to the number of guns at defendant's house, and failure to object to the prosecution's mention of defendant's post-arrest silence.  *Id.* at *11.  Here, there is one alleged instance of ineffective assistance of counsel and, thus, nothing to accumulate.  Morever, in *Mackey*, the Sixth Circuit noted that "the paucity of evidence against Mackey was striking," stating "the only issue in the case was who drew his weapon first, Mackey or Smith.  There were no witnesses who had a line of sight that would have allowed them to answer the question.  There was no forensic evidence to indicate who drew first, other than Smith's intoxication."  *Id.*  The instant case, however, did not have evidence of a paucity of evidence of Croce's guilt.  Rather, and as discussed at length above, the State produced sufficient evidence of Croce's guilty in the form of Mrs. Oravis' testimony, DNA evidence linking Croce to the victim on the night of the assault, and Nurse Schreiber's and Officer Zedella's testimony Ms. Oravis was upset, crying, and presented with multiple injuries.  Thus, the Court finds *Mackey* is distinguishable.

34

victim on the night of the assault; and Nurse Schreiber's and Officer Zedella's testimony Ms. Oravis was upset and crying and presented with multiple injuries, including abrasions to her neck (which would not have been accounted for by Croce's testimony).  In addition, the jury was also presented with evidence that Croce changed his story; i.e., he denied knowing Ms. Oravis when interviewed by Detective Hunter but testified at trial that he, in fact, knew Ms. Oravis and had consensual physical contact with her on the night of the assault.  Finally, the jury could have concluded, as the state appellate court suggested, that "if the victim was framing Croce for spurning her advances, surely she would have told the officers who her assailant was."  *State v. Croce*, 2014 WL 1513981 at *4-5.  As noted *supra*, evidence of Croce's prior convictions was not the critical factor in the case against him.  Rather, the crux of the State's case rested upon Ms. Oravis' testimony, her injuries, the DNA evidence, the testimony of the nurse involved in treating her, and the testimony of the police officers investigating the case.  Accordingly, even if counsel was deficient in failing to request a limiting instruction, Croce has not demonstrated the state appellate court was unreasonable in determining he failed to show prejudice under the second prong of *Strickland*.

In sum, while it may have been preferable for counsel to request an instruction limiting the jury's consideration of Croce's prior convictions, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Burger v. Kemp*, 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  A review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption

35

that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  In light of the above, the Court finds Croce has not shown the state appellate court was unreasonable in concluding his counsel was not ineffective for failing to request the limiting instruction at issue.

It is therefore recommended Croce's Third Ground for Relief be denied.

**C.      Ground Four**

In his Fourth (and final) Ground for Relief, Croce argues the "trial court erred by ordered [him] to serve consecutive sentences without due process of appropriate findings required by statute."  (Doc. No. 1-2.)  He maintains as follows:

> When the trial court and the appellate court failed to follow the statutes enacted it violated Croce's rights protected by the Eighth Amendment binding through the Fourteenth Amendment's Due Process Clause.  Specifically, the punishment did not fit the crime.  This is an error in that the sentence is a substantial difference to the crime allegedly committed.  Not only does the punishment not fit the crime, but the trial court and the reviewing State appellate court failed to adhere to Ohio Revised Codes.  The Respondent states, "outside the context of capital punishment, successful federal constitutional challenges to the length of a sentence alone are rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).  This clearly indicates that they are rare, not impossible, nor prohibited.  Accordingly, this Court should consider this aspect and render a decision in agreement with the Petitioner, Croce and vacate the sentence imposed and remand this matter to the State court.

(Doc. No. 18 at 6.)

Croce raised this claim on direct appeal.  (Doc. No. 10-1, Exh. 9.)  The state appellate court rejected it as follows:

> {¶ 30} In his fifth assigned error, Croce argues the trial court erred by sentencing him to consecutive sentences without making the required findings.
>
> {¶ 31} R.C. 2953.08(G)(2), governing appellate review of felony sentencing,

36

provides as follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 32} Thus, under R.C. 2953.08(G)(2), the following two grounds permit an appellate court to reverse a trial court's imposition of consecutive sentences upon an offender: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings." *See also State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013–Ohio–1891, ¶ 11.

{¶ 33} Under R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find that the sentence is "necessary to protect the public from future crime or to punish the offender." The trial court must also find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Further, the trial court must find that one of the following factors applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 34} In the instant case, the court complied with the findings required by the

statute. After considering seriousness and recidivism factors, the court stated as follows:

> I find that consecutive sentences are necessary to protect [the public] and punish you and not disproportionate, and I'm going to find that the harm was so great or unusual that a single term does not adequately reflect the seriousness of your conduct and that your criminal history shows that consecutive terms are needed to protect the public. * * *
>
> I think these sentences are appropriate, they're not disproportionate to any sentence this Court would impose for similar offenders by similar conduct, I think that the harm that was caused to [the victim] accurately reflects the sentence is appropriate.

Tr. at 774–775.

{¶ 35} Accordingly, because the trial court made the required findings under R.C. 2929.14(C), it did not err by sentencing Croce to consecutive sentences. Croce's fifth assigned error is overruled.

*State v. Croce*, 2014 WL 1513981 at * 6. Croce timely appealed and raised this claim to the Ohio Supreme Court, which declined jurisdiction. (Doc. No. 10-1, Exh. 12.)

Addressing the merits, Respondent argues that, to the extent Croce raises a sentencing claim under state law, such a claim is non-cognizable in federal habeas proceedings. (Doc. No. 10.) To the extent Croce is attacking his sentence on federal constitutional grounds, Respondent argues that any such claim, whether based on due process or the Eighth Amendment, is without merit because a sentence imposed within the statutory maximum (such as Croce's) generally does not raise a federal constitutional claim. (*Id*.)

To the extent Ground Four asserts a violation of Ohio law, the Court agrees with Respondent that it is not cognizable on federal habeas review. It is well-established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112

S.Ct. 475, 116 L.Ed.2d 385 (1991).  As such, the Supreme Court has explained "it is not the

province of a federal habeas court to reexamine state-court decisions on state-law questions."  *Id.*

at 67–68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244

F.3d 533, 542 (6th Cir. 2001).  Indeed, courts have consistently found that a habeas petitioner

cannot challenge the interpretation and application of Ohio's sentencing laws, as "a state court's

interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas

corpus action."  *Rettig v. Jefferys*, 557 F. Supp.2d 830, 838 (N.D. Ohio 2007) (citing *Howard v.

White*, 2003 WL 22146139, at *2 (6th Cir. 2003)).  *See also Ruffin v. Lazaroff*, 2016 WL

7974123 at * 6 (N.D. Ohio Nov. 1, 2016); *Linde v. Turner*, 2016 WL 1275729 at * 8 (N.D. Ohio

March 4, 2016); *Rossbach v. Turner*, 2015 WL 3953063 at * 10 (N.D. Ohio June 29, 2015).

The Court also rejects Croce's argument that the imposition of consecutive sentences

violated his due process rights.  Croce has not asserted his sentence falls outside the statutory

range.  Courts have consistently held that "[n]o federal constitutional issue is presented where, as

here, the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381,

1383 (2d Cir.1992); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)

("The sentence being within the limits set by the statute, its severity would not be grounds for

relief here even on direct review of the conviction, much less on review of the state court's denial

of habeas corpus."); *accord Kerr v. Smith*, 2009 WL 88054 at *15 (N.D. Ohio Jan.12, 2009)

("Claims which arise out of a state trial court's sentencing decision are not generally cognizable

upon federal habeas review, unless the habeas petitioner can show that the sentence imposed

exceeded the statutory limits or is wholly unauthorized by law.") (quoting *Lucey v. Lavigne*, 185

F. Supp.2d 741, 745 (E.D. Mich.2001)). *See also Rossbach v. Turner,* 2015 WL 3953063 at * 3

(N.D. Ohio June 9, 2015) ("It is well settled that a sentence that falls within the penalty set by statute normally does not violate the United States Constitution."); *Glenn v. Coleman*, 2014 WL 4983661 at * 20 (N.D. Ohio Oct. 6, 2014).  Here, Croce has not asserted or demonstrated that the trial court exceeded the maximum sentences authorized when it imposed consecutive sentences. *See also Rossbach,* 2015 WL 3953063 at * 3 ("Additionally, judges in Ohio have discretion to order that sentences run consecutively"); *Nunez v. Brunsman*, 886 F.Supp.2d 765, 770 (S.D. Ohio 2012) (finding that the imposition of consecutive sentences does not violate due process); *Hoffman v. Tribley*, 2013 WL 1137353 at * 2 (E.D. Mich. March 19, 2013).

Moreover, the Court rejects Croce's argument that the imposition of consecutive sentences was disproportionate ; i.e., that "the punishment did not fit the crime."  (Doc. No. 18 at 6.)  A claim that a sentence is unconstitutional because it is "grossly disproportionate" is generally construed as alleging a violation of the Eighth Amendment.  It does not appear Croce fairly presented an Eighth Amendment claim to the state courts.  Nonetheless, any such claim is without merit.  The Supreme Court has determined that strict proportionality is not required between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 959–960, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).  *See also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000); *Thomas v. Berghuis*, 2015 WL 5313636 at * 5 (6th Cir. Sept. 10, 2015) ("There is also no constitutional right to strict proportionality in sentencing").  Interpreting this "narrow proportionality principle," the Sixth Circuit has held "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  Consequently, "[a] sentence within the maximum set by statute generally does not constitute 'cruel and unusual punishment.' " *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (citing *United States v.*

40

*Organek*, 65 F.3d 60, 62 (6th Cir.1995)).  *See also Thomas*, 2015 WL 5313636 at * 5 ("A

sentence at or below the statutory maximum does not normally constitute cruel and unusual

punishment." ) As Croce's sentence fell within the statutory range, the Court finds it is not

"extreme" or "grossly disproportionate" to the offenses he committed.  *See Thompson v.

Williams*, 685 F. Supp.2d 712, 728 (N.D. Ohio 2010); *Morrison v. Warden, Richland

Correctional Institution*, 2015 WL 7295432 at * 10 (S.D. Ohio Nov. 19, 2015); *Glenn*, 2014 WL

4983661 at * fn 16.

      Accordingly, and for all the reasons set forth above, it is recommended that Ground Four

be denied.

## V. Conclusion

      For all the reasons set forth above, it is recommended the Petition be DISMISSED.


Date:  July 12, 2017                    *s/ Jonathan Greenberg*
                                               Jonathan D. Greenberg
                                               United States Magistrate Judge


## OBJECTIONS

      **Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**